# STREET *et al.* v. TULL.

No. 2429.    Opinion Filed February 11, 1913.

Rehearing Denied September 9, 1913.

(134 Pac. 871.)

**LANDLORD AND TENANT—Cancellation of Lease — Grounds—Intoxicating Liquors.** S. and R., being the owners of two lots on a business street in a city and a detached square of ground in the rear thereof, all of which property was occupied by buildings, leased the same under a single contract to T., with a proviso that he might sublet the same. T. sublet the square of ground with the building on it to a party, who, on the trial of an action brought by S. and R. against T. alone for the cancellation of T.'s entire lease, the court found had violated the provisions of section 4191, Comp. Laws 1909 (Rev. Laws 1910, sec. 3619 [section 12 of article 3, c. 69, p. 607, Sess. Laws 1907-08]), and canceled the lease from S. and R. to T. as to such square. There was no evidence connecting in any way T., either actively or passively, with such violation. Held error, that T.'s lease was not liable or subject to cancellation for the infraction of the said statute by a subtenant, unless the lease to such subtenant was made for the purpose of enabling him to violate the said statute, or that the violation was permitted or continued with the knowledge and consent of the said T.

(Syllabus by the Court.)

*Error from Superior Court, Oklahoma County;*
*A. N. Munden, Judge.*

Action by J. G. Street and another against Francis M. Tull. Judgment for plaintiffs for insufficient relief, and both parties bring error. Reversed and remanded, with instructions.

*Shartel, Keaton & Wells,* for plaintiffs in error.
*W. F. Wilson* and *John Tomerlin,* for defendant in error.

DUNN, J.   This case presents error from the superior court of Oklahoma county. Plaintiffs leased certain premises, consisting of two lots occupied by a brick building and also

a square in the center of the block of these lots, to the defendant for a term of five years, with the proviso in the lease that the second party might have the right to assign the said lease and sublet the premises therein described for any lawful purpose except that of a saloon, without the written consent of the first parties. It was also provided that failure to comply with the conditions of the lease on the part of the said' lessee gave the lessors the option of declaring the same void and of re-entering and taking possession of the said premises. The lessee, Tull, sublet the brick building which fronted on Main street for a clothing store and the building occupying the square in the center of the block to a party for use as a club. Alleging that the defendant, Tull, had sublet the property described as the square in the center of the block for the purpose of, and that the same was occupied and used for, a retail liquor business, plaintiff brought action against Tull for cancellation of the lease and for possession. Defendant answered by a general denial, and stated he was unaware that the premises or any part thereof had been used by his tenant for the sale of intoxicating liquors, and, if the same had been so used, it was in violation of covenants and agreements in the lease under which said subtenant held. On a trial had to the court without a jury, judgment was rendered for plaintiffs for possession of the square in the center of the block, for the reason that the same had been occupied and used for the sale of intoxicating liquors, and as to such property the plaintiffs were entitled to a cancellation of the lease, that the contract was severable, and that the illegal use of a portion of the premises described did not invalidate it as to the balance of the property. From this judgment both parties have appealed.

The plaintiffs contend that the cancellation of a portion of it for a violation of its terms of necessity compelled the cancellation of it all. Counsel for defendant contend that the evidence offered did not show that the lease made by Tull

to the occupant of the said premises was made for the purpose of having them used for the sale of intoxicants, or, if they were so used, that Tull knew of it or permitted it, and, further, that on having been told that such was the case, insist that he did all that was possible to bring about a cessation of the same, if it existed. Without discussing the evidence, we believe it will not be contended that it shows that Tull either leased the premises for the purpose of the sale of intoxicating liquors or that he actively or passively permitted the same to take place. The evidence shows that on being notified thereof, he immediately went to his tenant and was informed by him that the premises were not being used for the purpose of selling intoxicating liquors.

Plaintiffs rely upon section 4191, Comp. Laws 1909 (Rev. Laws 1910, sec. 3619. [section 12 of article 3, c. 69, p. 607, Sess. Laws 1907-08]), contained in an act the title of which in part indicates its purpose to be for the "prohibiting the manufacture, sale, barter, giving away or otherwise furnishing of intoxicating liquors, except as herein provided," and which reads as follows:

"It shall be unlawful for the owner or owners of any real estate, building, structure, or room, to use, rent, lease, or permit the same to be used for the purpose of violating any provision of this act. * * * All leases between landlords and tenants under which any tenant shall use the leased premises for the purpose of violating any provision of this act, shall be wholly null and void, and the landlord may recover possession thereof as in forcible entry and detainer."

Under this act and the lease before it, the court manifestly came to the conclusion that it was the lease which existed between the landlords, Street and Reed, and Tull which would be declared wholly null and void, and that it was the said landlords who might recover possession of the property as under forcible entry and detainer. The law does not look with favor upon the enforcement of forfeitures or penalties, and, if by a reasonable construction of this contract, the evidence, and the act together, the lease may be permitted to

stand, it will be the policy of the law to sustain it rather than to strike it down. There is no direct privity of contract between the occupant of the building on the square and plaintiffs in error. His landlord is their tenant, and he is the tenant of Tull, not of Street and Reed. If he is using the premises for the illegal sale of liquor, his lease from Tull may be avoided. Tull does not occupy the premises, nor has he any control over them, for the reason that he has entered into a contract subletting them. If his tenant is violating this law, he would have his remedy against him. Whether, owing to the penalties contained in this act, plaintiffs in error could likewise proceed against him is not before us in this case, and we need not pass upon it; but, if they can do so, they must of necessity make him a party to the proceeding, and if they had it would seem reasonable that it would be his lease and not Tull's which would be canceled, unless the latter had sublet for that purpose or was knowingly permitting him to violate the law.

Section 6 of chapter 101 of the Rev. Laws of Massachusetts 1902 reads as follows:

"All buildings, places or tenements which are resorted to for prostitution, lewdness or illegal gaming, or which are used for the illegal keeping or sale of intoxicating liquor, shall be deemed common nuisances."

Section 10 of the same act, being section 3 of chapter 405, Laws of 1855, reads as follows:

"If a tenant or occupant of a building or tenement, under a lawful title, uses such premises or any part thereof for any of the purposes enumerated in section six, such use shall annul and make void the lease or other title under which he holds and, without any act of the owner, shall cause the right of possession to revert and vest in him, and he may, without process of law, make immediate entry upon the premises, or may avail himself of the remedy provided in chapter one hundred and eighty-one."

The case of *Healy v. Trant*, 15 Gray (Mass.) 312, was one wherein Trant, who occupied the same situation as plain-

tiffs in this case, commenced an action under these statutes against his tenant, Healy, who occupied the same relationship as defendant, Tull.' On a trial of the action brought for the cancellation of the lease held by Healey because of a violation by a subtenant of the foregoing statutes, it appeared that Healy requested the court to rule that "where, under St. 1855, c. 405, sec. 3, the charge is, not that the person holding the lease has set up a nuisance, but that an undertenant has done so, though the lease of that undertenant may be thereby avoided, yet the lease of the original tenant is not avoided, unless it be shown that such nuisance was established and existed through his agency, either by direct participation in the establishment, or by allowing its continuance after notice and knowledge." But Morton, J., declined so to rule, and instructed the jury that, if Healy by himself or through his undertenants used the premises or any part of them as a house of ill fame, or for the illegal sale of intoxicating liquors, the lease was thereby avoided. On appeal the Supreme Judicial Court, considering that holding in the syllabus, said:

"The illegal use of premises by an undertenant for the sale of intoxicating liquors, or keeping a house of ill fame, does not, under the St. of 1855, c. 405, sec. 3, avoid the original lease, but only the underlease."

In the consideration of the case the court said:

"The ruling of the court was founded on a misconstruction of St. 1855, c. 405, sec. 3. The object of that provision was to avoid the title of the tenant or occupant, in the actual possession of premises, who should by himself or his servants use them for the unlawful purposes named in the first section of that statute, and to revest the estate in the person under whom he occupied. Such is the clear import of the language of the statute. It is the illegal use as by 'a tenant or occupant' which is 'to annul or make void the lease or other title under which said occupant holds.' But it was not intended to vacate the title of the owner or lessor by reason of the acts of a lessee or subtenant. The construction for which the defendant contends would operate very harshly on in-

nocent parties. The effect of it would be to destroy the title of a lessor, however valuable the term, by the acts of his sublessee or undertenant; of which his lessor or landlord had no notice or knowledge, and over which for the time he had no control. The 'owner' in whom the estate is to revest under this section, in case the premises are used for unlawful purposes, does not mean the person in whom the fee of the estate is vested, but the owner of the 'lawful title' under which the tenant or occupant enjoys the estate. In the present case therefore the title of the plaintiff as lessee of a term. of five years was not forfeited by the use of the premises by an undertenant for the purposes prohibited by the statute, but only the estate of such undertenant. The lease of the plaintiff was still in force as against the owner of the fee."

This case was afterwards followed by the case of *O'Connell v. McGrath,* 14 Allen (Mass.) 289, and *Prescott v. Kyle,* 103 Mass. 381.

The construction placed upon such an act by the Massachusetts court in our judgment is reasonable, and is the one which we should adopt in the present case.

The unreasonable consequences, if not to say unconstitutional results, which would follow any other holding seem to us to be apparent at a glance. Suppose, to strengthen the example of the case here before us, that Street and Reed owned this entire city block with its several hundred buildings and rooms, and that they leased the entire property to Tull. That Tull then leased it to several hundred different people, who entered upon their occupancy and engaged in their different occupations and uses therein, and then, without the knowledge of either Tull or any of these other sublessees, some one of them in some distant corner of this property should surreptitiously engage in the illegal sale of intoxicating liquors. Is it to be contemplated for a moment that the rights and contracts of this great body of people should, because thereof, be swept out of existence, and the primal landlord be permitted to enter and oust all of such innocent holders.

A statement of the proposition in our judgment is sufficient to refute the contention, and we therefore hold the judgment of the court was erroneous in holding for cancellation Tull's lease as to the square of ground located in the center of the block, and the case is remanded with instructions to set the said judgment aside and enter one in accordance with this opinion.

HAYES, C. J., and KANE and TURNER, JJ., concur; WILLIAMS, J., not participating.