## WIGGINS v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. February 9, 1921.)

### No. 160.

1. **Criminal law ☞409—Admission sufficient proof of ownership.**

   In a prosecution under National Prohibition Act Oct. 28, 1919, tit. 2, § 21, for maintaining a nuisance by keeping a place where liquors were kept and sold, the voluntary admission of defendant to the officers making the arrest that he was proprietor of the place and owner of the liquors *held* sufficient proof of such fact.

2. **Criminal law ☞693—Legality of method of obtaining evidence not open to inquiry at trial.**

   A collateral inquiry into the mode by which evidence offered has been obtained will not be allowed, when the question is raised for the first time at the trial.

3. **Intoxicating liquors ☞143—Proof of knowledge of sale not necessary to sustain conviction for maintaining nuisance.**

   Where there was sufficient evidence to sustain a finding that a defendant maintained a nuisance in violation of the National Prohibition Act, by keeping intoxicating liquors in his saloon for sale, it was not necessary to prove that he had knowledge of any actual sale.

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against Albert H. Wiggins. Judgment of conviction, and defendant brings error. Affirmed.

, The plaintiff in error was the defendant below and is hereinafter referred to as the defendant. An information was filed against the defendant by the United States attorney which charged that on the 4th and 5th days of March, 1920, in the Southern district of New York, the defendant unlawfully, willfully, and knowingly maintained a common nuisance at a place particularly described in New York City where intoxicating liquor, to wit, whisky, brandy, gin, and wine, containing more than one-half of 1 per cent. of alcohol by volume, and fit for use for beverage purposes, was sold, kept, and bartered, in violation of title 2 of the National Prohibition Act, being the Act of October 28, 1919 (41 Stat. 307). The jury returned a verdict of guilty on June 8, 1920, and the defendant was sentenced to imprisonment for 60 days in the New York City prison and to pay a fine of $100.

The government's evidence showed that on March 5, 1920, certain police officers attached to the Special Service Division of the New York Police Department entered, without a search warrant, a saloon and restaurant in New York City having on the outside the sign "Wiggins Hotel." The officer who first entered asked for a glass of whisky and was served by the bartender. Then another officer entered and tasted the drink and found it to be whisky and arrested the bartender. The bartender broke two bottles behind the bar. He then showed the officers a closet behind the bar containing a large number of demijohns and bottles containing liquid and labeled variously champagne, whisky, and gin. In a short time Wiggins came in. He told the officers he was the proprietor, that he had been arrested only yesterday, that he had had this "stuff" only a few days, and that it had cost a lot of money, and he asked them whether the affair could not be fixed up, and whether they could not leave the liquor or a portion of it. He himself stated that the demijohns contained whisky and sherry. One of the officers seized three bottles which he took from behind the bar and sealed them and took to a chemist. The whisky which was served in the glass to the officer who had asked for whisky was put into a small bottle and carried off by the officers. The chemist testified that the contents of all the liquor given to him contained more than one-half of 1 per centum of alcohol by volume. The defendant rested on the government's case, offering no evidence whatsoever.

George L. Donnellan, of New York City, for plaintiff in error.

Francis G. Caffey, U. S. Atty., of New York City (Albert C. Rothwell, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The defendant asks this court to reverse the judgment of conviction which has been pronounced upon him, and to dismiss the information.

[1] A motion to dismiss the information and discharge the defendant was made at the close of the defendant's case. The motion was made upon the ground that the government had failed to make out its case. This was predicated upon the theory that it was necessary on the part of the government to show knowledge on the part of the defendant of the sales made or alleged to have been made of liquors by the man employed there, and that there was not sufficient evidence before the court even to show ownership of the premises in the defendant. The court denied the motion and an exception was taken.

The National Prohibition Act, tit. 2, § 21, provides as follows:

"Any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title, and all intoxicating liquor and property kept and used in maintaining

the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or be imprisoned for not more than one year, or both. If a person has knowledge or reason to believe that his room, house, building, boat, vehicle, structure, or place is occupied or used for the manufacture or sale of liquor contrary to the provision of this title, and suffers the same to be so occupied or used, such room, house, building, boat, vehicle, structure, or place shall be subject to a lien for and may be sold to pay all fines and costs assessed against the person guilty of such nuisance for such violation, and any such lien may be enforced by action in any court having jurisdiction."

The statute thus makes any room or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of the act, and all intoxicating liquor and property kept and used in maintaining the same, a common nuisance, and makes any person who maintains such a common nuisance guilty of a misdemeanor and liable to the penalty of the law. To convict the defendant of the offense charged in the information against him, it was necessary to prove he was a person maintaining a common nuisance as defined in the statute.

As to the defendant's ownership of the premises there is evidence in the record showing that the bartender, after his arrest, sent for Wiggins, and that in a short time Wiggins came into the place while the officers were still there, and got into conversation with them. He asked one of the officers, "Can't we do anything about this?" He was asked, "Who are you, the proprietor?" He answered "Yes." One of the police officers testified as follows:

"Q. Did you have any conversation with him? A. I was standing in the rear of the store, the rear room, and he came over to me; he said: 'What is the trouble?' I told him the bartender was arrested for selling liquor, and he said, 'Jesus,' he said, 'This is too bad; I am only after coming from court.' He said, 'Are there anything can be done?' I said, 'Not that I know of.' He said, 'Well, what are you waiting for?' I said, 'Why, we are seizing all this liquor back of the bar.' Just directly in back of the mirrors of the bar was a room. He said: 'That is terrible; that is only in here a couple of days; I only got that in here a couple of days ago.' He said, 'Are there any chance of my getting some of it out?' I said, 'No; there is not any.' I said, 'Deane just notified the revenue department and they are sending men up to seize it.' He said, 'That is a lot of expense to lose all that.' He said, 'Are there anything we can do at all?' I said, 'Absolutely nothing.'"

The defendant made statements to other officers admitting ownership of the liquors and his desire to keep the liquors which had been seized. The admissions of a defendant, made voluntarily, and not impeached as having been made involuntarily, are strong evidence of the truth of what they purport to say. As there was evidence that the defendant admitted that he was the proprietor of the place and that he owned the liquors, the court could not have done otherwise than send the case to the jury, and there was no error in overruling the motion to dismiss.

It appears that after the bartender was placed under arrest he handed a key to one of the officers, and the latter used it to unlock a closet, which the officers opened and liquor secreted therein was taken into their possession. The four bottles previously referred to in the preliminary statement were produced at the trial and marked for identification; subsequently, when the chemist was on the stand, these

bottles were shown him, and after he had stated that the initials on them were his they were received in evidence over the defendant's objection, and exceptions were taken. The defendant's counsel stated that he objected to their reception in evidence upon the ground that the evidence showed they were seized illegally, and not in due process of law, and in violation of the constitutional rights of the defendant, and at a time and on an occasion when the defendant was not present. There had been no knowledge shown on the part of the defendant of any transaction on the part of the bartender.

After these exhibits were admitted in evidence, the witness stated that he had made an analysis of the contents of each, and ascertained the alcoholic content of each, and he proceeded to state what the alcoholic content was. The lowest any one of them contained was 18.57 per. cent. and the highest was 38.36 per cent. The admission of this evidence has been assigned for error.

[2] It is established law that a collateral inquiry into the mode in which evidence has been obtained will not be allowed, when the question is raised for the first time at the trial. Silverthorne Lumber Company v. United States, 251 U. S. 385, 392, 40 Sup. Ct. 182, 64 L. Ed. 319; Weeks v. United States, 232 U. S., 383, 395, 396, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575. The rule is stated in Greenleaf on Evidence, vol. 1, § 254a, as follows:

"It may be mentioned in this place that though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question."

In Wigmore on Evidence, vol. 3, § 2183, p. 2955, that writer says that—

"It has long been established that the admissibility of evidence is not affected by the illegality of the means through which the party has been enabled to obtain the evidence. The illegality is by no means condoned; it is merely ignored."

He had previously stated that—

"A judge does not hold court in a street car to do summary justice upon a passenger who fraudulently evades payment of his fare; and upon the same principle, he does not attempt, in the course of a specific litigation, to investigate and punish all offences which incidentally cross the path of that litigation. Such a practice might be consistent with the primitive system of justice under an Arabian sheikh; but it does not comport with our own system of law."

A defendant who thinks himself wronged by a seizure of property belonging to him, which he expects will be used against him later as evidence on a criminal charge, is not without adequate remedy. He should apply to the court for the return of the property alleged to have been illegally seized, and the issue of the legality of the seizure can then be determined in accordance with law and in an orderly manner. In what has been said we do not mean to imply that, where liquor is

being sold in violation of law, the arresting officers who witness the commission of the offense have not as much right to seize the liquors without a search warrant as they have to apprehend the wrong doer without a warrant of arrest. And we do not consider the suggestion of counsel that the search and seizure of the locked closet cannot be justified under the claim that it was the seizure of the instrument of the crime made at the hour of the arrest. If the suggestion has any merit at all, it certainly is without merit in this case—not having been made prior to trial in an independent proceeding.

[3] The suggestion was made at the argument in this court that the trial court erred in charging that the defendant is liable for the acts of the barkeeper. The answer to this is that the trial court did not so charge. It was not necessary to prove that the defendant knew of any sale having been made, or that the defendant profited by the sale made on March 5th. The portion of the charge complained of was as follows:

"If you are satisfied from the evidence beyond a reasonable doubt that there was a nuisance maintained on these premises, that is, that liquor was kept in violation of the law—and as I say, it could not be kept there consistently with the law, because this place is not claimed to be the dwelling of anybody, but a saloon, and the law prohibits the storage of liquor in such a place at all, where the liquor is for beverage use and contains more than one-half of 1 per cent. of alcohol in content by volume—and then again, if the liquor was kept there for the purpose of sale, if you deduce that to be the fact, it would be entirely unimportant and immaterial whether the defendant knew of any sales made. If it was kept there by him for the purpose of being sold by his barkeeper, it would not be necessary for you to inquire whether he had any knowledge of any particular sales by the barkeeper, if that was the purpose of having the barkeeper and the liquors there. He would be just as guilty as though knowledge of these actual sales was brought home to him, these sales to these particular persons. If you find therefore beyond a reasonable doubt that intoxicating liquor within the meaning of the law, was kept on these premises in violation of the law, or was sold there, and if you find further that that was done by him or contemplated to be done by him, and that the premises were his, and that he knew of the storage and disposition to be made of this liquor by his barkeeper, then he would be maintaining a nuisance in violation of section 21 of the law, and should be convicted."

There was no error in the above, or in any portion of the charge. It was fair throughout, and could not have misled the jury in any respect. One portion of it was so admirable that it may be found in the margin.[1]

[1] In concluding his charge Judge Grubb said: "Of course, you are not concerned with the propriety of this legislation, either the Eighteenth Amendment or the act of enforcement. That is none of your business, as it is none of mine. You might have one idea about it; you might disapprove of the law; so might I. But we are not sitting as Legislatures, and therefore have no right to criticize the laws that have been enacted by Congress and upheld by the highest court of the land, as is true of this amendment and law. They are the law of the land, and the law that you as jurors are sworn to support, just as I, as judge, am. And that is true, even though we might disapprove of the legislation. After the law becomes enacted, and when it comes to be enforced in courts by jurors, it would be a violation of their oaths, and of the judge's oath to do anything else, if the evidence shows beyond a reasonable doubt that the man on trial has violated the law. Now, if every juror was permitted to decide a case or every judge were permitted to decide a

The defendant has had a fair trial and the evidence fully justified the jury in returning a verdict of guilty. It is evident that the jury did not doubt that the defendant had violated the law.

Judgment affirmed.

---

case, dependent upon his approval of the law, it would be open for any man who disapproved of punishing a man for burglary or highway robbery, to sit on a jury, and say he would not convict because he did not approve of that law. That is not our system. As long as the law is a law, whether wise or unwise, we as jurors and judges have nothing to do with it. It is our duty to support it, provided the evidence beyond a reasonable doubt shows the defendant on trial violated it."