## UNITED STATES v. GAFFNEY et al.

(Circuit Court of Appeals, Second Circuit. March 1, 1926.)

No. 299.

1. **Intoxicating liquors** ⊂⇒271—**On bill to abate liquor nuisance, all persons whose right, title, or interest may be affected by granting relief sought are proper parties (National Prohibition Act, tit. 2, §§ 21–23 [Comp. St. Ann. Supp. 1923, §§ 10138½jj–10138½l]).**

In suit to enjoin a nuisance under National Prohibition Act, tit. 2, §§ 21–23 (Comp. St. Ann. Supp. 1923, §§ 10138½jj–10138½l), it is only necessary to add as proper parties all persons whose right, title, or interest may be affected by granting relief sought.

2. **Intoxicating liquors** ⊂⇒275.

Evidence as to continuance of acts productive of liquor nuisance after filing bill for abatement is admissible.

3. **Intoxicating liquors** ⊂⇒265—**One may maintain nuisance without having knowledge of actual sales of liquor (National Prohibition Act, tit. 2, §§ 21–23 [Comp. St. Ann. Supp. 1923, §§ 10138½jj–10138½l]).**

One may maintain nuisance under National Prohibition Act, tit. 2, §§ 21–23 (Comp. St. Ann. Supp. 1923, §§ 10138½jj–10138½l), without having knowledge of any actual sale of liquor.

**4. United States ⬤⟹5—United States possesses police power appropriate to exercise of sovereignty granted by Constitution.**

United States possesses whatever police power is appropriate to the exercise of any attribute of sovereignty specifically granted it by the Constitution.

**5. Intoxicating liquors ⬤⟹2½, New, vol. 8A Key-No. Series.**

Eighteenth Amendment gave the United States all the power necessary and appropriate to carry out object of the amendment.

**6. Landlord and tenant ⬤⟹103(1).**

Tenant's right to retain possession of leased premises depends on his observance of covenants in lease, both express and implied.

**7. Landlord and tenant ⬤⟹134(2).**

Every lease contains an implied obligation that lessee shall use property lawfully and for lawful purposes.

**8. Intoxicating liquors ⬤⟹264—Tenant's right to maintain lease against landlord was gone, on breaking covenant to obey National Prohibition Law, and government, in abatement proceedings, may assist landlord to recover premises (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.).**

When lessee broke covenant to obey National Prohibition Law (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), his right to maintain lease as against landlord is gone, and it was within power of nation to aid landlord to recover his premises.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the United States against Joseph W. Gaffney and others to abate a nuisance under National Prohibition Act, tit. 2, §§ 21–23. From a decree enjoining the nuisance, and granting a writ of assistance to enable the landlord to re-enter, defendant Joseph W. Mantell appeals. Affirmed.

The suit is to abate a nuisance under title 2, §§ 21–23, National Prohibition Act (41 Stat. 305 [Comp. St. Ann. Supp. 1923, §§ 10138½jj–10138½l]), and the nuisance is alleged to exist in the ground floor and basement of 252–254 West Fifty-Fifth street, New York City.

The corporate defendant owns the two numbers, which are connecting houses. In 1922 it leased the entire premises to Mantell for 21 years, and he took possession accordingly.

Gaffney was a subtenant of Mantell, and had a written lease from the latter of the basement and ground floor of No. 252 only. This lease was dated in December, 1924, and Gaffney testified that he had no connection with the place before the lease date.

It was proven, however, that the region leased to Gaffney was, both before and after the date of Gaffney's lease, devoted to a restaurant operated by one Marsenac, who is the "John Doe" of the bill. Marsenac was duly served with process and defaulted.

It was also proven that Marsenac's restaurant was a place where liquor was easily obtained by strangers; it was quite literally a "speak-easy." It was not proven at trial that any sales in violation of the statute occurred on the premises after the date of Gaffney's lease, and before this bill was filed in August, 1925. There was ample evidence of such infractions, both before Gaffney's lease date and after process issued. Marsenac's restaurant was in operation, whether Gaffney had or had not a lease of the region occupied by the restaurant.

The bill complained of the owning corporation, Mantell, Gaffney, and "John Doe" Marsenac, as maintaining a nuisance, but did not charge the owner with "soliciting, taking, and accepting orders for the sale of, and [with] selling intoxicating liquor," which was specifically charged against the other defendants.

The owning corporation, or landlord, admitted that the place was a nuisance, but further pleaded that Gaffney and Marsenac, "with the knowledge and consent of Mantell, and without the knowledge or consent of" the landlord, had conducted and were conducting the place as one where intoxicating liquors "are habitually and continuously sold and kept for sale for beverage purposes."

Mantell and Gaffney denied generally everything material. The former did not testify, though the evidence for the landlord was direct that the landlord's president had personally complained to Mantell of exactly what the government complained of in this bill, and he had done nothing.

The court below enjoined the nuisance, and at the prayer of the landlord forfeited Mantell's lease, and granted a writ of assistance to enable the landlord to re-enter, whereupon Mantell appealed, assigning for error the forfeiture of his lease, and the finding of nuisance.

Herman Chaityn, of New York City (George Cohen and Sanford H. Cohen, both of New York City, of counsel), for appellant.

Medina, Sherpick & McKee, of New York City (Eugene A. Sherpick, of New York City, of counsel), for defendant 252 and 254 West Fifty-Fifth Street Corporation.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). It is true that no evidence was given showing that Gaffney personally sold liquor upon the premises between the date of his lease and the date of filing bill. Therefore it is argued that, because it was not proved that any "cause of action" existed against Gaffney personally at the beginning of suit, suit must fall.

[1] This is a misconception of the nature of the suit. Whether Gaffney or another performed the acts which made the place a nuisance is immaterial. In a certain sense the suit was *against the nuisance,* and such a suit must be (as was this one) against the owner of the fee, unless the nuisance be of such a nature that the owner's presence is not necessary to a complete determination of the controversy. To such a bill it was only necessary to add as *proper* parties "all persons whose right, title, or interest may be affected by the granting of the relief sought." 29 Cyc. p. 1239, citing cases.

[2] Objection is also made to the taking of evidence as to the continuance of acts productive of nuisance after the filing of the bill. This is without merit, for, if any change in the ultimate rights of the parties has been produced by lapse of time since suit begun, a decree in equity will always be addressed to the rights existing, not at the moment of suit begun, but at the time of its determination. 21 C. J. p. 663. This is what is meant by the saying that equity acts in præsenti.

We therefore hold that the bill was formally well drawn, and it was proven by persuasive evidence that, before and during Gaffney's time as a tenant, a nuisance existed upon the premises caused (for the most part) by the doings of Marsenac.

This appeal brings us squarely to one of the points not reached in Duignan's Case (C. C. A.) 4 F.(2d) 983, for lack of pleading, viz.: Is it constitutional and lawful to forfeit Mantell's lease upon evidence failing to show that Mantell personally did any of the things which in the aggregate made a portion of the premises that he rented a statutory nuisance?

[3] That Mantell himself sold no liquor, and did not personally keep a bar or run a restaurant, is immaterial; a man may maintain a nuisance of the kind here complained of without having knowledge of any actual sale. Wiggins v. United States (C. C. A.) 272 F. 41, a case showing a man who made preparations to maintain a nuisance, but who carefully abstained from personally doing the work.

If the facts were that Mantell was deceived, that without his knowledge Gaffney, Marsenac et al. used premises obtained from Mantell for unlawful purposes, the situation would be quite different. What our holding would be, were Mantell guiltless of wrongdoing, we are not called upon to say, because we find that Mantell knew what Marsenac was doing, that he was personally remonstrated with about it, demands were made upon him by the landlord that he abate the nuisance, and he did nothing. On this record he consented to and connived at the doing of that which was proven against Gaffney and Marsenac. This is the direct evidence, and Mantell's failure to deny or explain induces belief that, had he testified, he would not have benefited his own case.

Thus the question is reduced to the inquiry whether such a man was lawfully treated by the decree complained of, under the Constitution and statutes of the United States.

[4] The constitutional authority to enact sections 21–23 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, §§ 10138½jj–10138½l) may be assigned to the police power. It has been said, rather carelessly, that the United States has no police power; but the accurate way of putting it is that the United States possesses whatever police power is appropriate to the exercise of any attribute of sovereignty specifically granted it by the Constitution.

[5] In Mugler v. Kansas, 8 S. Ct. 273, 123 U. S. 623, 31 L. Ed. 205, it was held that the state of Kansas had, as a part of its police power, the right even to destroy a brewery, when a Kansas prohibition law made a brewery a nuisance. Granting that, before the Eighteenth Amendment, the United States possessed no police power competent for the purposes of the decree below, when the amendment gave to the United States the powers thereby created, it gave also all the power necessary and appropriate to carry out the object of the amendment. Therefore the nation has to-day as much authority, police power, or sovereignty (the words shade into each other) to forfeit a lease for selling beer as Kansas had 40 years ago to destroy a building wherein the beer was brewed.

[6, 7] In considering jurisdiction over this particular kind of statutory nuisance, it is well to remember (as was observed in Grossman v. United States [C. C. A.] 280 F. 683) that jurisdiction in equity to restrain and abate nuisance is much older than the Volstead Act; that the right of any tenant to

retain possession of the leased premises depends upon his observance of the covenants in the lease, both express and implied; and that every lease contains an implied obligation that the lessee shall use the property lawfully and for lawful purposes. 36 C. J. 87. See, especially, Noon v. Mironski, 108 P. 1069, 58 Wash. 453.

[8] Entirely apart from the specific covenants of both Mantell's and Gaffney's leases, each of them impliedly contained a covenant to obey the National Prohibition Law. When that covenant was broken by the tenant, all right to maintain the lease as against the landlord was gone; and it was assuredly within the power of the nation to aid the landlord to recover his premises, by a method well known to the law, and not created by the amendment.

Decree affirmed, with costs against Mantell in favor of the landlord.

Let mandate issue forthwith.