## UNITED STATES v. SMAIL et al.

### Ex parte O'LEARY et al.

Circuit Court of Appeals, Second Circuit. March 12, 1928.

No. 196.

1. Intoxicating liquors ⊜⟿275—Information on which reasonable person would act is necessary for lessee's lease to be forfeited because of sublessee's liquor nuisance (National Prohibition Act, tit. 2, § 23 [27 USCA § 37]).

For lease to be forfeited under National Prohibition Act, tit. 2, § 23 (27 USCA § 37), because of the sublessee maintaining a liquor nuisance thereon, while it is not enough to show sublessee's guilt, it is not necessary that lessee should have had full knowledge thereof; but, if the information which lessee had was such that a reasonable person would act on it, if honestly disposed to prevent the unlawful use of the property, he was bound to follow it up, and, if he learned that his suspicions were justified, to take affirmative action, and, failing to do this, his inaction may be treated as connivance or participation, and cancellation of the lease granted on application of the lessor in the government's suit to enjoin the nuisance.

2. Intoxicating liquors ⊜⟿275—Lease may not be forfeited for sublessee's maintaining liquor nuisance, without evidence fastening on lessee some notice; likelihood that he knew not being enough (National Prohibition Act, tit. 2, § 23 [27 USCA § 37]).

Evidence is insufficient to warrant forfeiture of lessee's lease under National Prohibition Act, tit. 2, § 23 (27 USCA § 37), because of sublessee's maintaining a liquor nuisance, where evidence does not fasten on lessee some actual notice calling for action, but merely raises some likelihood that he knew what was going on.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the United States against Abbas Smail and others for abatement of liquor nuisance. From a decree canceling lease on cross-bill of defendants Margaret and Penelope O'Leary, defendants N. & M. Realty Corporation, Nathan Shapanka, and Minnie Stern appeal. Reversed, and cross-bill dismissed.

On June 24, 1927, the United States filed a bill in equity against Smail and Mosjian, the N. & M. Realty Corporation, the O'Learys, and Shapanka and Stern, alleging that the second floor of certain premises, Nos. 357–359 West Thirty-Eighth street, in New York City, was being used for the sale of liquor in violation of the National Prohibition Act (27 USCA) and that it had be-

come a public nuisance. The bill asked for an abatement of the nuisance and the closing of the premises for a year. Smail and Mosjian, the sublessees of the Realty Corporation, defaulted, but the O'Learys answered and filed a cross-bill against the N. & M. Realty Corporation, praying the cancellation of a lease from them to the corporation, because of its privity with the offense. The realty corporation answered the cross-bill, and filed a cross-bill against Smail and Mosjian for forfeiture of the sublease. Shapanka and Stern were the sole stockholders in the realty corporation. The case was heard on the bill and cross-bills and at the conclusion of the evidence the judge found that the premises complained of had become a nuisance and that the realty corporation either knew or should have known that it was. A decree was entered requiring a bond of the O'Learys against future violations, enjoining the sublessees, and, on the O'Learys' cross-bill, canceling the lease of the realty corporation. The cross-bill of the realty corporation does not appear to have been disposed of. The realty corporation, Shapanka, and Stern appeal from the decree upon the O'Learys' cross-bill.

The evidence showed without dispute that on October 27, 1922, the O'Learys let to the realty corporation five houses on West Thirty-Eighth street and Ninth avenue in New York for a term of 19 years. The house on the northeast corner of these streets was known both as 359 West Thirty-Eighth street and 502 Ninth avenue. Nos. 355 and 357 West Thirty-Eighth street were houses on the north side of Thirty-Eighth street, east of the corner; Nos. 504 and 506 Ninth avenue, those on the east side of Ninth avenue north of it. On February 25, 1927, the realty corporation let the second floor of the corner house to Smail, Mosjian, and one Ismail for a term of three years as a restaurant. The sublessees entered and occupied the premises as such, and the evidence showed that they surreptitiously sold liquor there to whoever came in as a guest. The theory of the O'Learys was that, from the freedom with which this was done, and from other evidence, Shapanka and Stern, and their agent, Kinkel, had learned of what Smail and his fellows were doing, and that they condoned in and connived at their offense. They asserted that thereby the whole lease was forfeitable under title 2, section 23 of the National Prohibition Law (27 USCA § 37).

H. & J. J. Lesser, of New York City (Emory R. Buckner, John M. Harlan, and

S. S. Isseks, all of New York City, of counsel), for appellant Realty Corporation.

William Harvey Smith, of New York City (John de Raismes Storey and William Harvey Smith, both of New York City, of counsel), for appellees O'Leary.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). In U. S. v. Gaffney (C. C. A.) 10 F.(2d) 694, where the complicity of the lessee with a sublessee was well established, we held that the lessor might forfeit the lease and re-enter under a decree upon such a cross-bill as that at bar. U. S. v. Duignan, 4 F.(2d) 983 (C. C. A. 2), affirmed 274 U. S. 195, 47 S. Ct. 566, 71 L. Ed. 996, went off on points of practice and cannot be treated as an authority. Grossman v. U. S., 280 F. 683 (C. C. A. 7), involved the cancellation of the lease of a guilty lessee, and Schlieder v. U. S., 11 F. (2d) 345 (C. C. A. 5), and U. S. v. Pepe, 12 F.(2d) 985 (C. C. A. 2), only the closing of the premises against the landlord. While the authority is meagre, we think that there may be situations in which a lease should be forfeited under section 23 because of the misconduct of a sublessee. This was assumed under a similar statute in Massachusetts (Healy v. Trant, 15 Gray, 312, O'Connell v. McGrath, 14 Allen, 289), and under a somewhat similar one in Oklahoma (Street v. Tull, 38 Okl. 689, 134 P. 871).

[1] The question is therefore under what circumstances the sublessee's fault should be imputed to the lessee. That it is not enough merely to show that the sublessee was guilty of a violation nobody asserts, and no case holds; the State decisions just cited are to the contrary. Moreover, it must be remembered that it is always possible for the lessor to tell the lessee of any information he may acquire of the sublessee's offenses, and thus to put the initiative upon him. If he fails to do so, and, as here, seeks merely to gather information for the purpose of forfeiting the lease, there is good reason to assume that his interest is rather in retaking his property than in protecting it from violations of the law. We recognize, however, that there may be information short of full knowledge which will suffice. Here, as elsewhere, a man charged with the duty to act may not close his eyes to circumstances which would lead an ordinary person to ascertain the facts more fully. We know of no other rule than that commonly applied in such situations; if the information is such that a reasonable

person would act upon it, if honestly disposed to prevent the unlawful use of his property, he is bound to follow it up, and, if he learns that his suspicions are justified, to take affirmative action. If he fails, the lessor may treat his inaction as connivance or participation, and apply to cancel the lease in such a suit as this. We think all this involved in our decision in U. S. v. Gaffney, 10 F.(2d) 694.

In the case at bar there was no direct evidence of the lessee's knowledge; usually that is difficult to get. Liquor was indeed served freely in Smail's restaurant; but this was not done openly, although at times there were drunken people on the premises. However, the neighborhood was a poor one, and less seemliness was to be expected in a restaurant conducted there than in other parts of the town. It was noisy and offensive to some of the other tenants. A dentist found, or thought he found, that this affected his practice. One of the other tenants said that some of the rooms in No. 504 Ninth avenue were used for assignation; but she was plainly hostile to the lessee, having been dispossessed, and she had left before Smail got his lease. Two detectives employed by the lessors asked for leases in one of the buildings to be used for restaurants, and told the lessee that they meant to sell liquor. They were answered evasively, and were not refused outright, though they got no leases before the authorities closed up the place. A door had been cut through from No. 502 to No. 504 on the second floor, which the lessors argued led to assignation rooms; but the proof of this was very weak. The lessee's agent was often on the premises, and so was Shapanka, and perhaps Stern, though she denied it. On the other hand, the lessee proved by several tenants that they had seen nothing untoward on the premises, and Shapanka and Stern and their agent naturally disclaimed any knowledge of Smail's practices.

[2] Upon this, as upon other cases of forfeiture, a court of equity does not look with a friendly eye. The penalty is severe, and the obligation upon the lessee heavy; it seems to us that more should be shown before a lease involving so much property is destroyed. That there is some likelihood that Shapanka and Stern, or their agent, did in fact know what was going on, we cannot deny; but a lessor must go further than that, else nobody's estate will be safe. He must fasten upon the lessee some actual notice calling for action, especially since, as we have said, it is always within his power to tell him

his suspicions directly, and impose upon him a duty to act. Mere indifference to proposed violations of law does not prove knowledge, nor does notice of independent and existing wrongdoing. At most it shows a disposition not to act, and the inference from that seems to us too tenuous to bear so momentous a conclusion. We cannot find that Kinkel or Shapanka, on their visits to the restaurant, must have known or should have surmised that liquor was being dispensed.

Were it not that the District Judge had found otherwise, we should have been in small doubt. His conclusion has indeed given us pause, but he avoided finding that the lessee knew of the violation, and his finding that it ought to have known involves a conclusion as to its duty under the circumstances, a question we may review. We do not think the evidence plain enough to impose such a duty.

Decree of forfeiture upon the cross-bill reversed; cross-bill dismissed.