## UNITED STATES v. LYONS, and eighteen other cases.

District Court, S. D. New York.
Oct. 5, 1932.

M. Michael Edelstein, of New York City, for William Lyons and David Tierney.

J. William Jarshower, of New York City, for Louis Porter.

Myers & Sherwin, of New York City, for Grade Realty Co., Inc.

Irving Abelov, of New York City, for Ben Sanders, John Mitchell, and Helen Fountain.

John Oliva, of New York City, for George Mead.

Mitchel Fruitstone, of New York City, for B. S. & J. Realty Corporation.

Edward W. McDonald, of New York City, for John Kelly.

Lefkowitz & Chapman, of New York City, for Sam Schwartz, Edward Lee, Alexander Lewis, Joseph Harris, and Harry Shapiro.

Robert A. Peattie, of New York City, for Emile Bonard, Enrico Pingo, and Peter Roscano.

Bernard J. Gardener, of New York City, for Joseph Cohen.

Louis Mishell, of New York City, for George Edwards.

J. William Jarshower, of New York City, for Joseph Dolsky and Commonwealth Holding Co.

Henry G. McDonough, of New York City, for Rockfall Holding Co.

Ellamarye Failor, of New York City, for John Dolan and Volger & Son.

Herman L. Falk, of New York City, for Tony Bova.

Joseph Wolff, for Bennie Silverman and others.

Laughlin, Gerard, Bowers & Halpin, of New York City, for Katharine R. Wells.

Van Vorst, Siegel & Smith, of New York City, for Julia L. Wells.

Morris A. Edelman, of New York City, for John Roth.

Sanford H. Cohen, of New York City, amicus curiæ.

M. Michael Edelstein, of New York City, of counsel, in support of all the motions.

George Z. Medalie, U. S. Atty., of New York City (Arthur H. Schwartz, Earl N. Bishopp, and Leonard Obermeier, Asst. U. S. Attys., all of New York City, on the briefs), for the United States.

WOOLSEY, District Judge.

These motions, each and all, are granted.

I. The locus standi of the moving parties in all these cases to appear specially and ask for the relief which they seek apparently is regularized by the decision of the Circuit Court of Appeals for this Circuit, handed down on July 21, 1932, in United States v. Fox (Felix Corryn appearing specially) 60 F.(2d) 685. But as certain contentions are made on these motions which apparently were not urged in the Circuit Court of Appeals, a consideration of the matter on principle is appropriate.

II. The rationale of the situation here, as I understand it, is that the applicants appear specially to challenge the exercise by this court of jurisdiction resulting in the closing by padlock of their properties, i. e., their leasehold premises, without the service of any subpœna on them, and, consequently, under the principle of United States v. Mathews (D. C.) 1 F. Supp. 562, without their having been made parties to the proceedings, which have matured, in one way or another, into decrees closing their premises and excluding them therefrom for varying terms.

Obviously, unless C has been authorized to accept service for B, A may not serve C with process in an equity suit and then exercise resultant remedies on B's property; for B has not had his chance at his day in court and his property can only be reached through him. In each of these motions, contending that he is still free of any personal jurisdiction and that the court may not impose conditions on his so doing, as that he must give his address, etc., B seeks to free his property from the alleged unlawful interference to which it has been subjected by the decrees attacked.

III. The government urges that, as the parties now appearing specially and pressing these motions financed the defense of these cases, they are estopped to complain of the decrees. I do not agree.

If proceedings of this kind were proceedings in rem wherein a party is reached through his property, the doctrine of estoppel would apply, just as a shipowner would be bound by the result of an admiralty suit in which he had authorized his captain to claim his vessel sued in rem; but, if these are proceedings in personam, the leasehold property involved can be reached only through proper service of process on the person who for the time being has dominion over it, i. e., the lessee, tenant, or occupant.

IV. In approaching the decision of questions such as are involved in these motions it is always helpful to start with first principles.

Indeed, most of the difficulties which have been encountered in these so-called padlock suits is due, I think, to the fact that counsel for both parties have too often viewed them as a new kind of proceeding, in effect sui generis, instead of regarding them merely as ordinary equity suits in which only the proceeding under the subsidiary remedy was in any wise novel.

It is settled that equity courts act only in personam and that the sanction of their decrees is punishment for contempt by imprisonment or fine, as the court may deem appropriate.

Therefore, as the control of the defendant's acts in some specified respect is the objective of a proceeding in equity, it is obvious that before he or his property, leasehold or other, can be affected by a decree, he must be notified by service of the appropriate writ, in the manner required by the law of the forum in which the proceeding is pending, of the complaint that is being made against him.

That complaint must show that the defendant himself has been guilty of a breach of duty owed by him to the plaintiff, or of some law which gives the plaintiff a locus standi to ask equity to control the defendant's actions by decree, and to invoke such appropriate subsidiary remedies as may be necessary to enforce his obedience thereto.

The seizure of property by equity courts when necessary to make enforcement of their decrees certain is as old as equity jurisdiction, and finds a modern sanction in Supreme Court equity rules 7, 8, and 9 (28 USCA §

723) which provide, in certain named circumstances, for the issuance of writs of assistance and writs of sequestration in cases where the decree or order of the court is for the delivery of possession of property. For an instance, approved by the Circuit Court of Appeals for this Circuit, of the use by a landlord of a writ of assistance in a liquor nuisance case see United States v. Gaffney, 10 F.(2d) 694, 697 (C. C. A. 2).

The so-called padlock provisions of decrees abating liquor nuisances are merely convenient devices, adapted to the situations met in an attempt to enforce the National Prohibition Act by equitable remedies, and are analogous in principle to the use of writs of sequestration or assistance although the conditions precedent required for them are not precisely the same.

Therefore an equity suit to abate a liquor nuisance is no more like a proceeding in rem or quasi in rem than is an equity suit for specific performance of a contract to convey land. In either case the powers and processes of equity courts are adequate and sufficiently adaptable to get what they are after.

But the courts first must have secured personal jurisdiction of the defendant who has committed the wrong—that is the sine qua non; for unless that is done the plaintiff has made a mistake and had a day in court with the wrong man. That is the government's difficulty here.

The proprietor of the property which is to be affected by a decree—in the instant motions, the proprietors of the premises wherein nuisances are alleged to have been maintained—has a right to his own day in court. Here he has not had it.

The moving parties here, therefore, are entitled both on principle and on authority to be heard.

V. It is obvious that one who maintains on his premises a liquor nuisance denounced by section 21 of title 2 of the National Prohibition Act, title 27, U. S. C. § 33 (27 USCA § 33), whether he be owner, lessee, tenant, or occupant of the premises in question, is the person against whom the decree of abatement must issue, together with its accompanying padlock penalties, added to ensure a good measure of its enforcement.

It is urged on me by the government that, if the maintainer of the nuisance be a lessee, tenant, or occupant of premises, the owner of the fee thereof, though innocent even of knowledge of the nuisance, may be sued for abatement on the ground that there is a nuisance maintained on an estate of which he owns the fee, although for the time being he has therein a reversionary interest only.

Against this view it is urged, in effect, by the moving parties that the owner of the fee of leased premises, being a reversioner only, has not presently any right to possession thereof, or to enter therein; that consequently he cannot abate the nuisance by his own act; that an equity court cannot effectively function in personam unless the person sued can properly be ordered to do or not to do the act necessary to consummate the remedy granted; that service of a subpœna in cases of this kind on the owner of the fee would, therefore, accomplish nothing towards achieving the objective of abatement; and that he can never be an indispensable party although he is admittedly a proper party to an abatement case.

VI. My own decision, rendered December 13, 1930, in United States v. Mathews, 1 F. Supp. 562, is cited by the moving parties, for there the owner of the fee was served and the lessee was not served, and on motion I dismissed the case against the owner of the fee.

The Mathews Case may well serve as a text for what I am about to say. The reason why I dismissed the complaint therein was that it did not state any cause of action against the owner of the fee. There was, therefore, no basis on which the case could proceed against him alone.

But if a cause of action, i. e., some breach of duty, were alleged against the owner of the fee, the case would, of course, be otherwise.

It seems to me that, if it can be charged against the owner of the fee that he has knowledge, or that he has been formally put on notice by the government of a liquor nuisance which is being maintained on his land by his lessee or tenant or by the occupant thereof, whether sublessee or not, and that, in spite of such knowledge or notice, he has allowed the nuisance to continue after he has had a reasonable chance to abate it by the exercise of the option given him under such circumstances by section 23 of title 2 of the National Prohibition Act (See 27 USCA § 37) to forfeit the lease, or has got rid of the nuisance in some other way, he would be subject to direct suit by the government to abate the nuisance whether the maintainer thereof were also joined or not. For in the case supposed the fee owner would have been guilty of suffering the nuisance to continue on his land and for that reason the suit could

proceed against him alone on a good cause of action.

VII. But it does not appear in the cases here involved, in which the owner of the fee was served, i. e., the cases of Porter, Silverman, McManus, Mead, Harris, and Sanders, that the owners of the fee had knowledge of or were put on notice of the nuisance before the suits were brought, and, consequently, there is not any cause of action alleged against them.

In all those cases, as in the others here before me, it was against the alleged lessee, tenant, or occupant or proprietors of the nuisance premises that the remedy was sought. Indeed, it is implicit in each of the complaints that the owners of the fees were innocent of knowledge of or of complicity in the breaches of the National Prohibition Act which constitutes the gravamen of each proceeding.

On such a state of the pleadings it is obvious that the situation in cases where the fee owner was served is not any stronger for the government, on these motions, than in the suits in which the only service had was on a bartender or other employee.

VIII. It seems to me, therefore, that all these motions are in the last analysis governed, both as to parties and principles, by the decisions of the Circuit Court of Appeals in United States v. Fox (Felix Corryn appearing specially) 60 F.(2d) 685, and United States v. White (Frank E. White appearing specially) 60 F.(2d) 958, and that they must be granted, but without prejudice to such subsequent proceedings as the government may decide to institute in respect of the liquor nuisances mentioned respectively in the several complaints before me.

Settle order on notice.